THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME HOLLOWAY, Defendant-Appellant.

First District (4th Division)    No. 1—92—2280

Opinion filed September 29, 1995.

HOFFMAN, P.J., dissenting.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter D. Fischer, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

The defendant appeals from a judgment entered against him for criminal sexual assault of his daughter, C.H., following a bench trial. On appeal, we address the issue of whether section 115—10(a)(2) of the Code of Criminal Procedure of 1963 permits the admission of hearsay statements made by a declarant over 13 years of age, concerning abuse that occurred when he or she was under 13. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a)(2).) In accordance with the courts' decisions in *People v. Bridgewater* (1994), 259 Ill. App. 3d 344, 631 N.E.2d 779, and *People v. E.Z.* (1994), 262 Ill. App. 3d 29, 633 N.E.2d 1022, we hold that the trial court erred in admitting the testimony of C.H.'s cousin, Erin Dalzell, because C.H. already had turned 13 when she told Dalzell that the defendant assaulted her nearly three years earlier. Because we also find that the evidence in this case was closely balanced, we reverse and remand for a new trial. See 134 Ill. 2d R. 615(a); *People v. E.Z.*, 262 Ill. App. 3d 29, 633 N.E.2d 1022.

The defendant, Jerome Holloway, was charged by indictment with two counts of aggravated criminal sexual assault committed against C.H. Prior to trial, the defendant objected to the admission of

hearsay statements made by C.H. to her cousin, Erin Dalzell. The court heard the State's offer of proof concerning the statements, as well as counsel's arguments, but it did not hear any testimony. The court ruled that hearsay statements made by C.H. to Dalzell when C.H. was nearly 14 years old were admissible under section 115—10.

At trial, C.H. testified that the defendant came from California for a visit in November of 1987. She was 11 years old at the time. C.H. testified that she came home from school around 3 or 3:30 p.m. on a Thursday, which was the day that the defendant arrived. She stated that she and the defendant were alone in the apartment at the time, and that this was the first time that she had seen him in a year.

C.H. testified that she was sitting next to the defendant on the couch. She stated that he began touching her thighs and buttocks in a way that made her uncomfortable, so she moved to the floor. At that point the defendant slapped her and made crude comments about her mother. According to C.H., the defendant said that she was a bad girl and was going to have to pay for what she did. C.H. testified that the defendant then struck her, tied her hands above her head and stuck an object in her mouth so that she could not speak. C.H. testified that he then assaulted her vaginally and orally. C.H. repeatedly testified that she did not recall what object the defendant used as a gag. However, at one point during her testimony she referred to the object as a "rag." Finally, C.H. testified that the defendant watched her shower following the assault and that he made her wash her entire body.

C.H. testified that on the Friday evening following the assault she attended a sleep-over party at the home of her cousin, Erin Dalzell. C.H. testified that at the party, she told her cousin Lynn that she had experienced "light bleeding" in school that day. She stated that the bleeding continued until Saturday. On cross-examination, C.H. did not recall whether she had told anyone that she bled for about a week following the attack.

In August of 1990, C.H. and her cousins, Erin and Lindsey Dalzell, had a sleep-over at C.H.'s new house. The gathering took place approximately one month before C.H.'s fourteenth birthday. C.H. testified that she was upset and had been having nightmares about the assault for about two weeks. When her cousin, Erin Dalzell, asked her what was wrong, C.H. initially said "[n]othing." C.H. stated that "[t]hen it came out, the abuse." C.H. testified that her cousins urged her to inform her mother and stepfather. C.H. then went into her parents' room, woke up her stepfather and told him that she had been sexually abused three years earlier.

Next, Erin Dalzell, C.H.'s cousin, testified on behalf of the State. Dalzell was 15 years old at the time of trial. She stated that C.H. was "dazing off" and very quiet on the night of the sleep-over in August of 1990. Erin testified that when she asked C.H. what was wrong, she avoided the issue. C.H. eventually stated that she was having nightmares about her father and that her father had touched her. Erin testified that she told C.H. to alert her mother.

Dr. Sharon Ahart, a board-eligible but not board-certified pediatrician, was the State's third and final witness. Dr. Ahart stated that in August of 1990 she examined C.H. She testified that there were only remnants of C.H.'s estrogenized tissue and that the musculature of the vagina had been stretched. According to Dr. Ahart, these factors were significant because they meant that something had penetrated C.H.'s vaginal opening.

Over the defendant's objection, Dr. Ahart testified that C.H. told her that her father had penetrated her digitally when she was four. Dr. Ahart also testified that C.H. told her that the defendant penetrated her on another occasion, both vaginally and orally. Dr. Ahart believed that C.H.'s vaginal trauma had been caused by sexual penetration. She based her findings on C.H.'s medical history, her own physical examinations and C.H.'s statements to her that she had been abused by her father. Further, Dr. Ahart stated that penetration may cause spotting, but not extensive bleeding.

Dr. Ahart indicated that she could not identify the object which had penetrated C.H. based solely on her physical examination. On cross-examination, Dr. Ahart admitted that the term "penetration" was not in her medical report on C.H. She also stated that the penetration observed in C.H. could not have been caused by a tampon one centimeter in width. Finally, Dr. Ahart agreed that prior to trial she had refused to answer some of defense counsel's questions concerning her medical report. The State then rested and the court denied the defendant's motion for a directed verdict.

Next, Officer Lee Mayer testified on behalf of the defendant. Mayer said that he interviewed C.H. on August 17, 1990. The majority of Mayer's testimony on direct examination served to impeach C.H. by omission. Mayer testified that C.H. did not say that the defendant had touched her legs or buttocks, used profanities in reference to her mother, watched her shower or that he made her wash her entire body. Mayer further testified that C.H. told him that she experienced a lot of bleeding for about a week following the assault. On cross-examination, over the defendant's objection, the court also admitted testimony concerning C.H.'s prior consistent statements to Mayer regarding the assault.

The defendant, Jerome Holloway, testified on his own behalf. He stated that he and the complainant's mother, Shirley Dalzell, were divorced in 1983 after seven years of marriage. In 1985, the defendant moved back to California, where he had grown up.

In November of 1987, the defendant came to Illinois for a visit. He stated that the purpose of the journey was to pursue a reconciliation with his former wife and to see his children. The defendant testified that in November of 1987, he arrived in Chicago around 7 or 7:30 on a Thursday evening. The defendant testified that Shirley and his three children met him at the airport. The defendant maintained that he was never alone with C.H. at any point during his visit. He testified that he did not return to Illinois until December of 1990 in connection with the charges filed against him. The defendant denied that he ever sexually abused C.H. Moreover, the defendant maintained that he was not in Chicago at the time that C.H. claimed that the abuse occurred.

At trial, the defendant made a motion to amend his answer to discovery to call Dr. Ramona Slupik as a defense expert to impeach Dr. Ahart's testimony that a tampon could not have caused the trauma that she observed on C.H. The defendant argued that he had been surprised by Dr. Ahart's testimony because she testified to issues not contained in her medical report. Specifically, nothing in Dr. Ahart's report indicated that she observed "penetration" upon examining C.H. However, the court denied the request on the grounds that the defendant had violated discovery rules.

The court subsequently found the defendant guilty of aggravated criminal sexual assault. At the sentencing hearing, the court vacated its original finding and entered a finding of criminal sexual assault. The court sentenced the defendant to six years in prison.

On appeal, the defendant argues that under section 115—10 the corroborative hearsay testimony of Erin Dalzell concerning statements made by C.H. was improperly admitted because C.H. was over 13 years old at the time the statements were made. The State responds that the defendant has waived any argument on this point because he never objected to Dalzell's testimony on the grounds of C.H.'s age at trial or in his post-trial motion.

For the reasons which follow, we find that it was error for the trial court to admit Dalzell's testimony concerning C.H.'s statements. Because we also find that the evidence in this case is closely balanced, we consider the merits of the defendant's argument under the plain-error doctrine. 134 Ill. 2d R. 615(a); *People v. Mitchell* (1993), 155 Ill. 2d 344, 614 N.E.2d 1213; *People v. E.Z.* (1994), 262 Ill. App. 3d 29, 633 N.E.2d 1022.

Section 115—10 provides in relevant part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1991, ch. 38, par. 115—10.

On two prior occasions, our court has addressed the issue of whether the age of the declarant at the time of his or her statements determines admissibility under section 115—10. (See *People v. E.Z.* (1994), 262 Ill. App. 3d 29, 633 N.E.2d 1022; *People v. Bridgewater* (1994), 259 Ill. App. 3d 344, 631 N.E.2d 779.) In *Bridgewater*, the court held that under section 115—10 the declarant must be under the age of 13 at the time of a statement concerning abuse in order for the statement to be admissible under section 115—10. The court noted that under *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, exceptions to the hearsay rule which are not firmly rooted require a showing of a particularized guarantee of trustworthiness. The court determined that given the principles surrounding the admission of a statement as an exception to the hearsay rule, section 115—10 should be narrowly construed. The court further reasoned that under a narrow construction of the statute, the age requirement applies to the time of the statement as well as the time of the alleged abuse.

The court in *Bridgewater* also indicated that its interpretation is consistent with the statutory purpose of section 115—10, citing the legislature's concern that immature victims may be unable to testify. Finally, the court noted that individuals under 13 years of age are less likely to manipulate their out-of-court statements, while the same may not be true for someone older.

In *E.Z.*, the court reversed and remanded the defendant's case for a new trial because the trial court admitted the complainant's statements to her mother which were made after she had reached the age of 13. However, the court there simply followed *Bridgewater* without elaborating further. We now take the opportunity to expand on the court's rationale in *Bridgewater*.

The cardinal rule of statutory construction is that courts must ascertain and give effect to the intent of the legislature. (*Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 610 N.E.2d 1250; *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596.) Courts should look to the language of the statute first because it is the best indication of legislative intent. (*Wagner v. City of Chicago* (1995), 166 Ill. 2d 144, 149, 651 N.E.2d 1120, 1122, quoting *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81, 630 N.E.2d 820; *Salas*, 138 Ill. App. 3d at 56, 485 N.E.2d at 602.) "Statutory construction begins with the plain meaning of the language employed, and ends there when the meaning is clear." *People v. Porter* (1993), 156 Ill. 2d 218, 222, 620 N.E.2d 381, 384.

The present dispute hinges on the interpretation of "such child" in section 115—10(a)(2). The defendant argues that the statute is clear and unambiguous, and that the phrase "such child" in section 115—10(a)(2) refers to the previously specified "child under the age of 13" contained in the initial clause of part (a).

The State does not offer an explanation of the meaning of the word "such" in the phrase "such child" in section 115—10(a)(2). Rather, the State argues that the age listed in part (a) of the statute only refers to the age of the victim at the time of the crime, not at the time of the statement.

"[I]n interpreting a statute, we read it as a whole, giving meaning to every word and paragraph." (*La Salle Partners, Inc. v. Illinois Property Tax Appeal Board* (1995), 269 Ill. App. 3d 621, 626, 646 N.E.2d 935, 938.) Therefore, we cannot overlook the word "such" in section 115—10(a)(2) and must attempt to ascertain its meaning. Our supreme court has held that the word "such" is defined as " 'of the sort previously indicated or contextually implied; before mentioned; previously characterized or specified; of the same kind or class as something mentioned.' " *People ex rel. Miller v. Mobile & Ohio R.R. Co.* (1940), 374 Ill. 376, 383, 29 N.E.2d 604, 607; see also *Luciani v. Certified Grocers of Illinois, Inc.* (1969), 105 Ill. App. 2d 448, 456, 245 N.E.2d 523, 527 (" '[S]uch' always refers to something that has gone before").

In section 115—10(a)(2), "such" is being used as an adjective to

modify the word "child." In response to the question "which child," it is reasonably conceivable that the legislature meant the previously specified "child under the age of 13" as indicated in the beginning of part (a). However, it is also possible that "such" refers to the child "[i]n a prosecution for a sexual act perpetrated upon a child under the age of 13." This interpretation may be contextually implied given the beginning portion of part (a).

We find that section 115—10(a)(2) is capable of being understood in more than one sense. Also, looking at the language alone, we cannot say whether it should be broadly or narrowly construed. (See generally *People v. Jones* (1993), 264 Ill. App. 3d 556, 636 N.E.2d 604.) Broadly constructed, section 115—10 would not place an age limit on the admissibility of a child's out-of-court statements. Conversely, a narrow construction would mean that statements made when a child is over the age of 13 are inadmissible.

Ambiguity exists when a statute is capable of being understood in two different senses by reasonably well-informed persons. (*Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 429, 594 N.E.2d 1243, 1247, citing 2A N. Singer, Sutherland on Statutory Construction § 45.02, at 6 (Sands 5th ed. 1992).) Because the language of section 115—10(a)(2) is capable of being understood in more than one sense, we find that it is ambiguous.

When a statute is susceptible of two interpretations, it is proper to examine sources other than its language for evidence of intent (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167), including a statute's legislative history. (*People v. Zaremba* (1994), 158 Ill. 2d 36, 630 N.E.2d 797; *People v. Boykin* (1983), 94 Ill. 2d 138, 445 N.E.2d 1174; *People v. Jones* (1993), 264 Ill. App. 3d 556, 636 N.E.2d 604.) Legislative debates may be used to determine the history of the times or the evil that the legislature intended to remedy. (*Hyatt*, 230 Ill. App. 3d 423, 594 N.E.2d 1243.) Thus, for guidance we turn to the legislative debates surrounding the enactment of Public Act 82—782 (Pub. Act 82—782, § 1, eff. January 1, 1983), the original version of section 115—10.

■ The legislative history of section 115—10 shows that it was intended to assist children under the age of 13. Initially, what is now section 115—10 was introduced to the Illinois General Assembly as Senate Bill 1077. During the debates concerning the bill, Representative Jaffe stated:

> "As you know, we have a very difficult time convicting criminals when it comes to children, because children's testimony has not taken it to court. And this is, I think, a minor step forward to let some corroboration go into the record, with regard to the child's

testimony ***." (82d Ill. Gen. Assem., House Proceedings, March 25, 1982, at 87 (statements of Representative Jaffe).) As originally drafted, Senate Bill 1077 allowed corroborative testimony of an individual under the age of 18. (82d Ill. Gen. Assem., Senate Bill 1077, 1981 Sess. (introduced April 29, 1981).) As the debate progressed, one representative questioned whether testimony of a 17-year-old needed corroboration, stating that the age of 18 was too high. (82d Ill. Gen. Assem., House Proceedings, March 25, 1982, at 88 (statements of Representative Stearney).) Eventually, the bill was amended to reduce the age requirement from 18 to 12. (82d Ill. Gen. Assem., House Proceedings, March 25, 1982, at 91.) We find that this amendment to the original bill demonstrates a legislative intent to provide assistance for a younger child victim, rather than an older one.

Additionally, our supreme court has noted, in *dicta*, that the prosecution of cases involving sexual abuse of children always presents special problems of proof, often because a young child is unable to testify adequately. (See *People v. Mitchell* (1993), 155 Ill. 2d 344, 614 N.E.2d 1213; *People v. Smith* (1991), 221 Ill. App. 3d 605, 582 N.E.2d 317.) Our court has noted that "[t]he complaints of youthful victims become more credible, more reliable, and better understandable when supported by the testimony of adults corroborating them." (*Mitchell*, 155 Ill. 2d at 351, 614 N.E.2d at 1216; see also Essenburg, *Accommodating Child Victims in the Criminal Courtroom*, 78 Ill. B.J. 248 (1990).) In this case, C.H. was nearly 14 when she spoke with Erin Dalzell, and both were 15 years old at the time of trial.

We also look to the United States Supreme Court decision in *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139, for guidance on its view of nontraditional, statutorily created exceptions to the hearsay rule. In *Wright*, the Court addressed Idaho's residual hearsay exception which was used to admit testimony concerning the hearsay statements of a $2^1/_2$-year-old girl. In *Wright*, the court distinguished between firmly rooted hearsay exceptions and those that are statutorily enacted. Statutory exceptions to the hearsay rule which are not "firmly rooted" exceptions must be supported by a particularized guarantee of trustworthiness. Illinois courts consistently have acknowledged that section 115—10 is not a firmly rooted hearsay exception. *Bridgewater*, 259 Ill. App. 3d 344, 631 N.E.2d 779; *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010; *People v. Rocha* (1989), 191 Ill. App. 3d 529, 547 N.E.2d 1335.

Given the debates in the Illinois General Assembly, the principles discussed in *Idaho v. Wright*, and our own supreme court's

recognition of the goals of the statute as an exception to the hearsay rule, we conclude that section 115—10(a)(2) warrants a narrow construction. We agree with the defendant that section 115—10 was enacted because of the deficiencies of child witnesses. As such, we determine that, under section 115—10(a)(2), testimony about an out-of-court statement made by a child is inadmissible if the child was older than 13 when the statement was made. (*Bridgewater*, 259 Ill. App. 3d 344, 631 N.E.2d 779; *E.Z.*, 262 Ill. App. 3d 29, 633 N.E.2d 1022.) In the present case, C.H. was nearly 14 years old when she spoke to Erin Dalzell about the defendant's abuse. Therefore, we find that the trial court erred in admitting Dalzell's testimony.

Further, we note that the trial court here found C.H. to be a capable witness, commenting on C.H.'s ability to withstand extensive cross-examination. After our own independent review of the record, we find that although C.H.'s testimony contained inconsistencies, she was able to testify adequately, having understood and answered numerous questions.

■ Finally, we must determine whether the evidence here is closely balanced such that a new trial is warranted. We find that the present case turned primarily on the credibility of C.H. and the defendant. After reviewing the record, we have determined that C.H.'s testimony contained inconsistencies. Additionally, the State never rebutted the defendant's assertion that he was not in Illinois at the time that C.H. said the assault occurred. Finally, we have concluded that it was error for the trial court to admit Dalzell's testimony, yet the court expressly considered her testimony when it found the defendant guilty. Given these factors, we find that the error in admitting Dalzell's testimony was prejudicial. Therefore, we reverse and remand for a new trial.

Reversed and remanded.

S. O'BRIEN, J., concurs.

PRESIDING JUSTICE HOFFMAN, dissenting:

While I believe that the majority's interpretation of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10) is what the law ought to be, I respectfully dissent because I do not believe that it accurately reflects what the law is.

Section 115—10 provides in pertinent part as follows:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by *such child* of an out of court statement made by *such child* that he or she complained of such act to another; and

(2) testimony of an out of court statement made by *such child* describing any complaint of such act *** which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 115—10.

Relying upon *People v. Bridgewater* (1994), 259 Ill. App. 3d 344, 631 N.E.2d 779, the defendant asserts, and the majority agrees, that although the assault in issue occurred when C.H. was 11 years old, testimony of her out-of-court statements did not fall within the exception to the hearsay rule created by section 115—10(a)(2) because she did not make the statements prior to attaining age 13. I disagree.

Statutory language is to be given its plain and ordinary meaning, and when the language of statute is unambiguous, the court should look no further than the language used to ascertain the intent of the legislature. (*County of Du Page v. Graham, Anderson, Probst & White, Inc.* (1985), 109 Ill. 2d 143, 485 N.E.2d 1076.) As the majority correctly observes, the determination of whether a statute is ambiguous is made by considering the statute as a whole (*La Salle Partners*, 269 Ill. App. 3d 621, 646 N.E.2d 935), not merely by focusing upon isolated provisions. I believe that in concluding that the statute in issue is ambiguous, the majority has neglected to analyze the enactment as a whole, but rather has focused only upon the language of subsection (a)(2).

Section 115—10 neither expressly nor implicitly restricts admissibility based upon the age of the child at the time the statement is made; rather, the threshold requirement for admissibility is merely that the prosecution be one for a sexual act perpetrated upon a child under the age of 13. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(a).) Section 115—10(b) encompasses safeguards of reliability by precluding admission without a hearing out of the presence of the jury to evaluate the time, content, and circumstances of the statement. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b).) I believe that the construction placed upon this statute by the court in *Bridgewater* and the major-

ity in this case is contrary to the plain language of the statute and an unfounded restriction on the trial court's discretion in evaluating any such statement in light of the totality of the circumstances (see *Idaho v. Wright* (1990), 497 U.S. 805, 822, 111 L. Ed. 2d 638, 656-57, 110 S. Ct. 3139, 3150), including the time at which the statement was made.

The majority interprets the phrase "such child" in section 115—10(a)(2) to mean a child under age 13. But the legislature used the same phrase in section 115—10(a)(1). If the phrase "such child" in section 115—10(a)(2) is interpreted to mean a child under age 13 as the majority holds, then presumptively the legislature intended the phrase to have the same meaning in section 115—10(a)(1). The result is anomalous at best. Under such an interpretation, the testimony by a victim of her own out-of-court statement would only be admissible as an exception to the hearsay rule under section 115—10(a)(1) if she both made the statement prior to attaining age 13 *and* testified to it prior to reaching 13. Whereas, under section 115—10(a)(2), a third person could testify to the victim's out-of-court statements so long as the victim was under age 13 when the statements were made, but without regard to the age of the victim at the time that the testimony is given.

Contrary to the majority, I believe that the only reasonable interpretation of the phrase "such child" as used in this statute is one which refers to a child who was the victim of a sexual assault prior to attaining age 13, without regard to the age of that child either at the time that the statement was made or the time the testimony is given. Such an interpretation allows for a consistent meaning of the phrase throughout the statute, and it leaves the question of ultimate admissibility to the trial court after it has conducted a hearing to ensure reliability.

For these reasons, I disagree with the interpretation placed upon section 115—10(a)(2) by the majority and dissent from the result reached in this case. I would merely amend the mittimus to reflect that the defendant was convicted of simple sexual assault rather than aggravated sexual assault, a point conceded by the State, and affirm the defendant's conviction, as I find his other arguments on appeal to be without merit.